435 A.2d 151

**COMMONWEALTH of Pennsylvania**

v.

**Carl A. BRIDGE, Appellant.**

Supreme Court of Pennsylvania.

Submitted March 2, 1981.

Decided Sept. 24, 1981.

Reargument Denied Jan. 26, 1982.

Henry W. Gent, III, Franklin, for appellant.

F. Walter Bloom, III, Dist. Atty., Wm. G. Martin, Franklin, for appellee.

Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

NIX, Justice.

Appellant, Carl A. Bridge, was sentenced to a term of imprisonment of five (5) to ten (10) years following a jury finding that he was guilty of voluntary manslaughter. The charge resulted from the shooting by appellant of his ex-wife, in the head, causing her death. At trial the Commonwealth attempted to establish murder of the first degree. Evidence was introduced by the prosecution to establish that appellant killed his ex-wife pursuant to a predesigned plan. The defense did not deny responsibility for the death but argued in the alternative, that appellant was not guilty by reason of involuntary intoxication or guilty of no more than involuntary or voluntary manslaughter by reason of the "serious" provocation on the part of the victim and appellant's diminished capacity by reason of intoxication. Postverdict motions were denied and this direct appeal followed.

The first assignment of error in this appeal is the trial court's refusal to instruct the jury they could consider appellant's claim of voluntary intoxication in determining whether the requisite intent for voluntary manslaughter had been established. This assignment of error focuses upon the

present draft of section 308 of the Crimes Code.[1] That section provides:

§ 308. Intoxication or drugged condition.

Neither voluntary intoxication nor voluntary drugged condition is a defense to a criminal charge, nor may evidence of such conditions be introduced to negative the element of intent of the offense, except that evidence of such intoxication or drugged condition of the defendant may be offered by the defendant whenever it is relevant to reduce murder from a higher degree to a lower degree of murder.

Appellant initially argued that this section offends equal protection guarantees asserting that a legislature may not limit the use of evidence of intoxication to the crime of murder of the first degree and preclude its use in lesser crimes requiring a specific *mens rea*.[2] In the supplemental brief the argument was rephrased into a due process attack. It was asserted that a defendant could not be precluded from introducing evidence of voluntary intoxication to negate an element of the criminal offense which the prosecution is bound to prove beyond to prove a reasonable doubt. These contentions reflect the recurring question as to what, if any, role voluntary intoxication will be allowed to play in the determination of criminal responsibility.

Even the most permissive society recognizes that voluntary intoxication will not be tolerated as an excuse or justification for anti-social behavior. Thus the law has consistently rejected as a defense the actor's assertion that "I would not have committed the deed if I had been sober." The cases are legion in this jurisdiction reaffirming the principle that voluntary intoxication neither exonerates nor excuses criminal conduct. *Commonwealth v. Gordon*, 490 Pa. 234, 416 A.2d 87 (1980); *Commonwealth v. Pitts*, 486 Pa. 212, 404 A.2d 1305 (1979); *Commonwealth v. England*, 474 Pa. 1, 375 A.2d 1292 (1977); *Commonwealth v. Graves*, 461

1. 18 Pa. C.S.A. § 308, Act of December 6, 1972, P.L. 1482, No. 334, § 1, *as amended*, April 7, 1976, P.L. 72, No. 32, § 1.

2. The equal protection argument was clearly without merit and does not require discussion.

Pa. 118, 334 A.2d 661 (1975); *Commonwealth v. Fostar*, 455 Pa. 216, 317 A.2d 188 (1974); *Commonwealth v. Tarver*, 446 Pa. 233, 284 A.2d 759 (1971); *Commonwealth v. Campbell*, 445 Pa. 488, 284 A.2d 798 (1971); *Commonwealth v. Ingram*, 440 Pa. 239, 270 A.2d 190 (1970); *Commonwealth v. Brabham*, 433 Pa. 491, 252 A.2d 378 (1969); *Commonwealth v. Reid*, 432 Pa. 319, 247 A.2d 783 (1968); *Commonwealth v. Simmons*, 361 Pa. 391, 65 A.2d 353 (1949), *cert. denied*, 338 U.S. 862, 70 S.Ct. 96, 94 L.Ed. 528, *reh. denied* 338 U.S. 888, 70 S.Ct. 181, 94 L.Ed. 546; *Commonwealth v. Eyler*, 217 Pa. 512, 66 A. 746 (1907); *Commonwealth v. Cleary*, 135 Pa. 64, 19 A. 1017 (1890); *Keenan v. Commonwealth*, 44 Pa. 55 (1863); *Kilpatrick v. Commonwealth*, 31 Pa. 198 (1858); *Respublica v. Weidle*, 2 Dall. 88 (1781).

Notwithstanding this firmly imbedded concept, it is evident that evidence of voluntarily induced intoxication is not totally irrelevant in criminal cases. In some instances, intoxication is an element of the offense, e.g., driving under the influence, and therefore proof of intoxication (or some degree thereof) is necessary to prove the crime.[3] 75 Pa. C.S.A. § 3731. *See also Commonwealth v. Horn*, 395 Pa. 585, 150 A.2d 872 (1959); *Commonwealth v. Palmer*, 265 Pa.Super. 462, 402 A.2d 530 (1979).

It is also true that there are certain instances where intoxication is not an element of the offense, and yet evidence of intoxication is nevertheless accepted as being relevant. For instance, if the accused seeks to offer his intoxication to prove that he did not perform the physical act required by the crime—that he was unconscious at the time and therefore did not commit the deed—this evidence is germane to the factfinders' inquiry and is properly submitted for their evaluation. In such cases, the issue can be

3. The word "intoxication" used in this opinion is intended to convey its broad meaning including the resultant state caused by drugs as well as alcohol voluntarily consumed. We intentionally exclude from our present consideration any state of intoxication not voluntarily induced.

neatly confined to the question of whether the accused was the perpetrator of the deed charged.

The areas discussed to this point provide little basis for disagreement and are not the subject of our instant concern. There is no contention that the present version of section 308 in any way touches upon these accepted principles. The difficulty arises when we reach the question as to whether or not the actor's degree of sobriety should be relevant to determine the mental state required to commit the crime charged.

At this point, the societal judgment relating to overindulgence and the concern that intoxication may be used as a device to avoid punishment comes into play. As stated where the legislature has expressly made the actor's state of sobriety relevant or where the degree of inebriation may have affected the actor's ability to perform the act required to commit the crime, the reluctance to permit evidence of intoxication to be considered by the factfinder is not present. In contrast, where the state of mind of the actor is at issue the reluctance to allow this evidence is probably reflective of the instinctive distrust of our ability to accurately ascertain the mental state of another. There is also a natural repugnance against one voluntarily depriving himself of his faculties, and then seeking to excuse errant behavior because of the absence of those faculties. *Commonwealth v. McCausland*, 348 Pa. 275, 35 A.2d 70 (1944); *Commonwealth v. Dudash*, 204 Pa. 124, 53 A. 756 (1902). Competing with these conditions is the argument that where the legislature has seen fit to define a particular state of mind as being a prerequisite of the offense then *all* factors bearing on whether that state of mind in fact existed then becomes relevant. That the legislative judgment to specifically define a particular state of mind as a prerequisite for the offense evidences an intent to make irrelevant the circumstances which brought about the state of mind of the actor when the act was committed. The point at issue is what in fact was that state of mind and all facts relevant to that

question, including voluntarily induced inebriation, should be considered by the finder of fact.[4]

A number of the jurisdictions in this country follow the latter view and hold where a crime requires a specific *mens rea* evidence of intoxication is allowed to be introduced to demonstrate that the defendant did not possess the requisite intent. *State v. Cooper*, 111 Ariz. 332, 529 P.2d 231 (1974); *Stevens v. State*, 246 Ark. 1200, 441 S.W.2d 451 (1969); *People v. Conley*, 64 Cal.2d 310, 49 Cal.Rptr. 815, 411 P.2d 911 (1966); *Dolan v. People*, 168 Colo. 19, 449 P.2d 828 (1969); *People v. Heiple*, 29 Ill.App.3d 452, 330 N.E.2d 556 (1975); *Preston v. State*, 259 Ind. 353, 287 N.E.2d 347 (1972); *State v. Watts*, 223 N.W.2d 234 (Iowa 1974); *State v. Wheeler*, 195 Kan. 184, 403 P.2d 1015 (1965); *State v. Kjeldahl*, 278 N.W.2d 58 (Minn.1979); *State v. Ostwald*, 591 P.2d 646 (Mont.1979); *State v. Tapia*, 81 N.M. 274, 466 P.2d 551 (1970); *People v. Jones*, 27 N.Y.2d 222, 316 N.Y.S.2d 617, 265 N.E.2d 446 (1970); *State v. Simmons*, 286 N.C. 681, 213 S.E.2d 280 (1975), vacated in part on other grounds, 428 U.S. 903, 96 S.Ct. 3207, 49 L.Ed.2d 1208; *State v. French*, 171 Ohio St. 501, 172 N.E.2d 613 (1961); *State v. Smith*, 260 Or. 349, 490 P.2d 1262 (1971); *Bradford v. State*, 208 Tenn. 500, 347 S.W.2d 33 (1961); *State v. Hartley*, 16 Utah 2d 123, 396 P.2d 749 (1964); *State v. Conklin*, 79 Wash.2d 805, 489 P.2d 1130 (1971). *See* J. Hall, *General Principles of Criminal Law*, 529–33 (2d ed.1960); J. Miller, *Handbook of Criminal Law*, 137–41 (1937); Paulsen, *Intoxication as a Defense to Crime*, 1961 U.Ill.L.F. 1; 22 C.J.S. *Criminal Law*, § 68(a).

The history of this issue in this jurisdiction has been a checkered one. In *Commonwealth v. Tarver, supra,* this Court restricted the use of evidence of intoxication to reducing the offense of murder of the first degree to a lesser degree of murder. It rejected the view that this evidence should be allowed wherever a specific *mens rea* crime was charged. The *Tarver* position was repudiated by the legislature in its original draft of section 308 which provided:

4. For a general discussion of this area, *see*: Murphy, Has Pennsylvania Found a Satisfactory Intoxication Defense?, 81 Dick.L.Rev. 199 (1977).

§ 308. Intoxication or drugged condition.

Intoxication or drugged condition are not, as such, defenses to a criminal charge; but in any prosecution for any offense, evidence of intoxication or drugged condition of the defendant may be offered by the defendant whenever it is relevant to negative an element of the offense.

This provision did not limit the use of evidence of voluntary intoxication to an offense requiring a specific *mens rea*. It followed the Model Penal Code [Section 2.08(1) Proposed Official Draft, 1962] form of the defense and looked to all elements of the crime alleged to determine whether the offense required proof of some actual purpose or awareness that the intoxication might negate. If such an element was required under the definition of the crime, then evidence of voluntary intoxication was permitted to negate its existence.

After the promulgation of the original version of section 308, this Court was again called upon to consider the question in relationship to crimes that occurred prior to the Crimes Code of 1972.[5] In *Commonwealth v. Graves, supra,* the Court concluded that evidence of intoxication could be introduced to negate intent in crimes possessing a specific intent. Thus *Graves* went beyond *Tarver*'s limited application to murder of the first degree and yet did not go as far as section 308's application to crimes that did not require a specific *mens rea*.[6]

Subsequent to our decision in *Graves, supra,* the legislature saw fit to revise section 308 to its present form. The

5. It must be emphasized that the applicability of our opinion in *Commonwealth v. Graves,* 461 Pa. 118, 334 A.2d 661 (1975) was only to crimes committed prior to the effective date of the Crimes Code of 1972. The *Graves* Court was fully aware that section 308 was promulgated to govern offenses that occurred thereafter. That decision in no way intended to affect those cases where section 308 would be applicable. Thus, any subsequent modification of section 308 by the legislature did not affect the vitality of the decision in *Commonwealth v. Graves.*

6. In footnote 4 in *Commonwealth v. Graves,* 461 Pa. at 124 n. 4, 334 A.2d 664 n. 4, we recognized that there was authority for the broader position adopted by the legislature in its original draft of section 308.

present version of section 308 is virtually an adoption of the *Tarver* view.

Up to this point we have discussed the policy questions involved and related how those questions have been responded to by legislatures and courts. Appellant in this appeal seeks to transcend the policy judgments involved and address the constitutional framework within which those judgments must be made. The thrust of appellant's due process argument is that where a crime has been defined as requiring a specific intent the defendant may not be precluded from providing before the factfinder relevant evidence to negate that intent.

Appellant does not question the wide discretion in state legislature to define crimes.

We cannot cast aside the centuries-long evolution of the collection of interlocking and overlapping concepts which the common law has utilized to assess the moral accountability of an individual for his antisocial deeds. The doctrines of *actus reus, mens rea*, insanity, mistake, justification, and duress have historically provided the tools for a constantly shifting adjustment of the tension between the evolving aims of the criminal law and changing religious, moral, philosophical, and medical views of the nature of man. This process of adjustment has always been thought to be the province of the States.

*Powell v. Texas*, 392 U.S. 514, 535–536, 88 S.Ct. 2145, 2155–56, 20 L.Ed.2d 1254 (1967). His quarrel is that where the legislature has required the proof of a fact as a requirement for committing the offense the defendant cannot constitutionally be prevented from offering relevant evidence to disprove that fact. *See e. g. Commonwealth v. Rose*, 457 Pa. 380, 321 A.2d 880 (1974); *Commonwealth v. Bonomo*, 396 Pa. 222, 151 A.2d 441 (1959). Accepting this proposition at face value, we find that it fails to support appellant's position under the instant facts. Here the evidence of intoxication sought to be introduced was not relevant to the fact in issue under the evidentiary law of this jurisdiction.

The traditional definition of voluntary manslaughter has required a mental state where the malice accompanying the act causing the death has been dissipated by passion invoked by legal provocation. 18 Pa.C.S.A. § 2503(a)(1). *Commonwealth v. Cain*, 484 Pa. 240, 398 A.2d 1359 (1979); *Commonwealth v. Harris*, 472 Pa. 406, 372 A.2d 757 (1977); *Commonwealth v. McCusker*, 448 Pa. 382, 292 A.2d 286 (1972); *Commonwealth v. Jennings*, 442 Pa. 18, 274 A.2d 767 (1971); *Commonwealth v. Ingram, supra.* We have also recognized the legislative intention that "the determination of whether a certain quantum of provocation is sufficient to support the defense of voluntary manslaughter is purely an objective standard." *Commonwealth v. McCusker*, 448 Pa. 382, 389, 292 A.2d 286, 289 (1972). Even prior to the revision of section 308 the voluntary intoxication of the actor was rejected as a factor in determining the sufficiency of the provocation. *Commonwealth v. Cambric*, 475 Pa. 454, 380 A.2d 1224 (1977); *Commonwealth v. Ingram, supra.* In *Commonwealth v. Graves, supra*, upon which appellant relies, we stated: "We agree that to incorporate one's state of sobriety into the test of sufficient provocation would be completely improper." *Id.*, 461 Pa. at 125, 334 A.2d at 664. Thus since the issue was the sufficiency of the provocation, the trial court would have been sustained for excluding testimony relating to intoxication for this purpose even if the verdict returned was a degree of murder. It necessarily follows that if the challenged evidence was not relevant to reduce the degree of homicide to voluntary manslaughter, which appellant gratuitiously received from the jury, it was also not relevant to reduce the offense to an even lesser degree of manslaughter.

Appellant seeks to focus the attention on the volitional aspect of voluntary manslaughter and argues that the degree of intoxication would reflect an involuntary act thus justifying its relevance. The fallacy in that position is that if the evidence failed to provide a basis for negating the malicious state of mind it obviously would not establish a

*non malicious,* non volitional act.[7] Even accepting that appellant proved his claimed "serious" provocation on the part of the victim, his malicious response would not constitute involuntary manslaughter. At best a non-intended result springing from a callous and reckless act would be established and a verdict of murder would have been justified. *Commonwealth v. Cambric, supra; Commonwealth v. Lawrence,* 428 Pa. 188, 236 A.2d 768 (1968); *Commonwealth v. Carroll,* 412 Pa. 525, 194 A.2d 911 (1963); *Commonwealth v. Nelson,* 396 Pa. 359, 152 A.2d 913 (1959). The constitutional claim dependent upon a showing of a preclusion of a legitimately relevant fact cannot here be demonstrated.

■ The next assignment of error charges that the trial court improperly allowed the Commonwealth to plead surprise and to permit the jury to consider the witness's prior statements as substantive evidence rather than confining them to impeachment purposes. An analysis of this testimony shows that even if appellant is correct as to his hearsay contention, the admission of this testimony was harmless error. *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978).

■ The final two assignments of error verge on the frivolous and are not deserving of more than cursory mention. Appellant argues that the trial court erred in declining to charge the jury as to what he asserts was evidence that the victim was stealing from the business. First, the trial testimony did not reveal any basis for the court to charge relative to a theft by the victim. However, assuming that it did, that fact would not justify a theory of involuntary manslaughter.[8] The use of deadly force to prevent a

7. Drunkenness does not negate a depraved heart by blotting out consciousness of the risk. W. LaFave & A. Scott, *Criminal Law,* Chapter 7, § 70 (1972).

8. Appellant also argues that this charge would have supported a claim of voluntary manslaughter. To the extent that may be true, it is immaterial since the jury returned a verdict of voluntary manslaughter.

.

theft is clearly voluntary and not involuntary manslaughter. *Commonwealth v. Light*, 458 Pa. 328, 326 A.2d 288 (1974); *cf. Commonwealth v. Whitfield*, 475 Pa. 297, 380 A.2d 362 (1970); *Commonwealth v. McCusker*, 448 Pa. 382, 292 A.2d 286 (1972). *See also State v. Barr*, 115 Ariz. 346, 565 P.2d 526 (App.1977).

■ The final contention is that the police in their investigation did not thoroughly pursue the question of whether appellant was under the influence of liquor or drugs at the time of his apprehension. Offered as an example of the alleged neglect in this regard was the asserted failure to order an urinalysis or a breathalizer test. The weakness of this argument is that, even if we assume the legitimacy of these complaints, we perceive no harm sustained by appellant. As we have previously noted, proof of voluntary intoxication would not have entitled appellant to a verdict of a lesser degree of homicide than the verdict returned in this case.[9] Moreover, while the Commonwealth has a duty to preserve and disclose evidence they may uncover during the course of their investigation that exculpates an accused, *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1968); *Commonwealth v. Rose*, 483 Pa. 382, 396 A.2d 1221 (1979), we are not aware of an affirmative obligation on the part of the Commonwealth to search for evidence that might be supportive of a defense for the accused.

Accordingly, the Judgment of Sentence is affirmed.

ROBERTS and LARSEN, JJ., concurred in the result.

---

**9.** Although appellant, through convoluted reasoning, urges that the inadequacy of the investigation may have undermined his claim of involuntary intoxication, it is obvious upon examination that the police investigation, even if conducted in the manner suggested by appellant, would not have revealed whether the drugs were voluntarily or involuntarily ingested.